John P. Aldrich, Esq.
Nevada Bar No.: 6877
**ALDRICH LAW FIRM, LTD,**
1601 S. Rainbow Blvd, Ste 160
Las Vegas, Nevada 89146
Telephone (702) 853-5490
Facsimile (702) 227-1975
jaldrich@johnaldrichlawfirm.com

Counsel for Plaintiff

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

WALTER WASILEFF derivatively on behalf of
Nominal Defendant WONDER AUTO
TECHNOLOGY, INC.
                    Plaintiff,

            vs.

LARRY GOLDMAN, XIANZHANG WANG,
QINGDONG ZENG, XIAOYU ZHANG,
QINGJIE ZHAO, MERIRONG YUAN,
YUNCONG MA, DAVID MURPHY, and
XINGYE ZHANG,

            Defendants,

        -and-

WONDER AUTO TECHNOLOGY, INC.,
a Nevada Corporation,

            Nominal Defendant.

Case No.:
Dept. No:

**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT FOR
BREACH OF FIDUCIARY DUTY**

**DEMAND FOR JURY TRIAL**

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action on behalf of Wonder Auto Technology, Inc.

("Wonder Auto" or the "Company") against Wonder Auto's board of directors (the "Board") and

certain officers (collectively "Defendants").  This action seeks to remedy defendants' violations

of law, including breaches of fiduciary duties, waste of corporate assets, and unjust enrichments,

which have caused and continue to cause substantial damage to the Company.

2.      Wonder Auto is a manufacturer of automotive electric parts, suspension products, and engine components in the People's Republic of China.  The Company's products include alternators, starters, engine valves and tappets, and rods and shafts for use in shock absorber systems.  Their products are used in a range of passenger and commercial automobiles.  Wonder Auto sells its products to original equipment manufacturers (OEMs), engine manufacturers, and automotive parts suppliers.

3.      Wonder Auto announced on February 23, 2011, in connection with the preparation of its consolidated financial statements for the fiscal year ended December 31, 2010, that certain financial statements included in their Annual Reports and Quarterly Reports should no longer be relied upon due to a cutoff error regarding timing of revenue in such periods.  These unreliable financial statements include: (1) financial statements for the years ending December 31, 2008 and 2009 included in the Annual Report on Form 10-K for the year ending December 31, 2009; (2) financial statements for the quarters ended March 31, June 30 and September 30 during each of the years 2008 and 2009 included in the Quarterly Reports on Form 10-Q.  Further, the Company is still evaluating the impact of the cutoff errors on its financial results for the year ended December 31, 2010 and on its internal control over financial reporting as of December 31, 2010.

4.      In breach of their fiduciary duties to the Company, Defendants knowingly engaged in improper financial reporting and accounting practices, and disseminated false and misleading financial statements in violation of SEC regulations and Generally Accepted Accounting Principles ("GAAP").   Each individual defendant knowingly disseminated inaccurate and misleading financial information regarding the Company, and these misrepresentations of the Company's financial results, via submissions to the SEC, constitute a breach of their fiduciary duties to the Company.

5.      Defendants' reckless conduct continues to cause Wonder Auto substantial damage. Now Wonder Auto is faced with extremely costly lawsuits, fines, penalties, resources responding to civil investigations, increased operating costs due to burdensome requirements and restrictions imposed by regulators, lost revenues and profits due to operational shutdowns or curtailments, as well as serious harm to Wonder Auto's business reputation and goodwill due to the adverse publicity resulting from their misconduct.

6.      Defendants caused Wonder Auto to engage in unlawful conduct to enrich themselves.  Defendants directly or indirectly participated in the issuance of false financial statements that portrayed the Company as being financially stronger.  This allowed the Company to raise millions of dollars in capital in secondary offerings.  Defendants by direct participation in the scheme, or indirectly by failing to perform their fiduciary duties to Wonder Auto, allowed millions of dollars of Wonder Auto's cash to be moved to related entities through various related party transactions.  Defendants hid these transactions from shareholders to conceal the true nature of the transactions.  Defendants did this knowing their actions would hurt Wonder Auto and its shareholders in the longer term.

7.      Demand on the Board, at the time this action was filed, to bring this lawsuit or to vigorously pursue these claims would have been a futile and useless act.  A majority of Wonder Auto's directors are directly implicated in these unlawful transactions.  To file suit, Wonder Auto's Board would have had to sue themselves and people they hired and supervised.  Such action by Wonder Auto's Board would not only expose the Individual Defendants' own incompetent and illegal behavior, but also expose them to enormous liabilities.  Wonder Auto's Board simply will not do this.  For the true facts to be uncovered and proved, and the harm to Wonder Auto remedied with future harm ameliorated or prevented, this action must be pursued by one or more shareholders derivatively on behalf of, and for the benefit of, Wonder Auto.  This

1    action is brought in good faith for the benefit of Wonder Auto and it is respectfully requested this

2    Court permit this action to proceed.

3                                              **PARTIES**

4        8.    Plaintiff Walter Wasileff is, and was at the time of Defendants' commission of the

5    wrongful acts complained of herein, a Wonder Auto shareholder.  Walter Wasileff is a citizen and

6    resident of the State of South Carolina.

7        9.    Plaintiff brings this action derivatively in the right of and for the benefit of

8    Wonder Auto.  Plaintiff will fairly and adequately represent the interests of Wonder Auto and its

9    shareholders in enforcing the rights of Wonder Auto.

10       10.    Nominal defendant Wonder Auto Technology, Inc., is a public company listed on

11   the NASDAQ and incorporated in the State of Nevada.  Wonder Auto, through a subsidiary,

12   designs, develops, manufactures and sells automobile alternators and starters and other

13   automotive electrical parts in the People's Republic of China, Brazil and South Korea.  Wonder

14   Auto has its principle executive offices located at No. 16 Yulu Street, Taihe District, Jinzhou,

15   Liaoning, 121013, China.

16       11.    Defendant Larry Goldman ("Goldman") has served as a director of the Company

17   since March 2007.  Defendant Goldman has served as Chairman of the Audit Committee since

18   March 2007.  Defendant Goldman is also a member of the Compensation Committee and

19   Governance and Nominating Committee.  Defendant Goldman is a citizen of the United States.

20       12.    Defendant Xianzhang Wang ("Wang") has served as a director of the Company

21   since April 2009.  Defendant Wang serves as the Chair of the Compensation Committee.

22   Defendant Wang is also a member of the Audit Committee and Governance and Nominating

23   Committee.  Upon information and belief, Wang is a citizen of China.

- 4 -

13.     Defendant Qingdong Zeng ("Zeng") has served as a director of the Company since June 2010 and its Chief Strategy Officer since July 2010.  He has also been president of a Wonder Auto subsidiary, Jinzhou Wanyou, since September 2006.  Upon information and belief, Zeng is a citizen of China.

14.     Defendant Xiaoyu Zhang ("Zhang") has served as a director of the Company since April 2009.  Defendant Zhang is Chairman of the Company's Governance and Nominating Committee.  Defendant Zhang is also a member of the Audit Committee and Compensation Committees.  Upon information and belief, Zhang is a citizen of China.

15.     Defendant Qingjie Zhao ("Zhao") has served as Wonder Auto's Chairman of the Board since June 2006.  Defendant Zhao has also served as Wonder Auto's Chief Executive Officer and President since June 22, 2006.  Upon information and belief, Zhao is a citizen of China.

16.     Defendant Meirong Yuan ("Yuan") has served as the Company's Chief Financial Officer and Treasurer since June 2006.  From 2007 to 2009 Defendant Yuan was a member of Wonder Auto's board of directors.  Defendant Yuan has also been a director of Wonder Auto subsidiary Jinzhou Halla Electrical Equipment Co., Ltd since January 2002.  Upon information and belief, Yuan is a citizen of China.

17.     Defendant Yuncong Ma ("Ma") has served as the Company's Chief Operating Officer since June 2006.  Defendant Ma has also been a director and general manager of Wonder Auto subsidiary Jinzhou Halla Electrical Equipment Co., Ltd since October 1997.  Upon information and belief, Ma is a citizen of China.

18.     Defendant David Murphy ("Murphy") served as a Wonder Auto director from March 2007 until April 2009 and was Chairman of the Compensation Committee.  Murphy was

also a member of the Company's Audit and Governance and Nominating Committees.   Upon information and belief, Murphy is a citizen of the U.S. and resides in China.

19.    Defendant Xingye Zhang ("X. Zhang") served as a director of the Company from July 2007 until April 2009.   Defendant X. Zhang was Chairman of the Governance and Nominating Committee.   Defendant Zhang was also a member of the Audit Committee and Governance and Nominating Committee.   Upon information and belief, X. Zhang is a citizen of China.

20.    Defendants Goldman, Wang, Zeng, Zhang, Zhao, Yuan, Ma, Murphy, and X. Zhang are collectively referred to herein as the "Individual Defendants."

## JURISDICTION AND VENUE

21.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interests and costs.   This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).   This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

22.    Venue is proper in this district because nominal defendant Wonder Auto is incorporated in this District.

## DEFENDANTS' DUTIES
### Fiduciary Duties

23.    By reason of their positions as officers, directors, and fiduciaries of Wonder Auto and because of their ability to control the business and corporate affairs of Wonder Auto, Defendants owed Wonder Auto and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Wonder Auto in a fair, just, honest, and equitable manner.   Defendants were and are required to act in furtherance of the best interests of Wonder Auto and its shareholders to benefit all shareholders

equally and not in furtherance of their personal interests or benefit.  Each director and officer of the Company owes to Wonder Auto and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

24.     Defendants, because of their positions of control and authority as directors and officers of Wonder Auto, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.   Because of their advisory, executive, managerial, and directorial positions with Wonder Auto, each of the Defendants had knowledge of material non-public information regarding the Company.

*Reasonable and Prudent Supervision*

25.     To discharge their duties, the officers and directors of Wonder Auto were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of Wonder Auto were required to, among other things:

a)     exercise good faith to ensure Wonder Auto's affairs were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b)     exercise good faith to ensure Wonder Auto operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

c)     when put on notice of problems with Wonder Auto's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

*Code of Ethics*

26.     Since at least March 2007, the Company had in place its Code of Ethics which promotes "ethical conduct and integrity generally" and is applicable "to all directors, officers and employees," (collectively, the "Covered Persons").  According to the Code of Ethics, all Covered

Persons must "endeavor to avoid all situations that present an actual or apparent conflict of interest."

27.     The Code of Ethics expressly states "all directors and executive officers of the Company must understand and take responsibility for the Company's compliance with the applicable governmental laws, rules and regulations of the cities, states and countries in which the company operates, and for the complying with the applicable rules and listing standards of any national securities exchange on which the Company's securities may be listed and directs all employees to comply with all federal and state rules and regulations."

28.     Further, the Code of Ethics states that the Company must have "rules to promote full, fair, accurate, timely and understandable disclosure.  All books and records of the Company shall fully and fairly reflect all Company transactions in accordance with accounting principles generally accepted in the United States of America, and any other financial reporting or accounting regulations to which the company is subject."

*Audit Committee Duties*

29.     The Audit Committee assists the Board's oversight of the integrity of the Company's financial reports, compliance with legal and regulatory requirements, the qualifications and independence of the Company's independent registered public accounting firm, the audit process, and internal controls.  The Audit Committee operates pursuant to a written charter adopted by the Board.  The Audit Committee is responsible for overseeing the corporate accounting and financing reporting practices, recommending the selection of the Company's registered public accounting firm, reviewing the extent of non-audit services to be performed by the auditors, and reviewing the disclosures made in the Company's periodic financial reports. The Audit Committee also reviews and recommends to the Board that the audited financial statements be included in the Company's Annual Report on Form 10-K.

*Control, Access, and Authority*

30.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Wonder Auto, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

31.     Because of their advisory, executive, managerial, and directorial positions with Wonder Auto, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and growth prospects of Wonder Auto.

32.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Wonder Auto, and was at all times acting within the course and scope of such agency.

### SUBSTANTIVE ALLEGATIONS

33.     In recent years, a class of Chinese companies has emerged on the international capital market.   These companies obtain U.S. public listings through a back-door maneuver known as a "Chinese Reverse Merger" ("CRM") and thus avoid initial public offerings, which are more public, slower and more onerous than reverse mergers.   Typically, a U.S. dormant shell company, which is worthless except for its public listing, acquires a Chinese business.   The American board then resigns, and the Chinese board takes over.   The company changes its name and issues new stock to hedge funds and other investors, typically raising millions of dollars in fresh capital.

34.     These CRM companies often fall between the cracks of market regulation, as the SEC's enforcement staff cannot subpoena evidence of any fraudulent activities in China, and Chinese regulators have little incentive to monitor shares sold only in the U.S.

35.     The Public Company Accounting Oversight Board ("PCAOB"), established under the Sarbanes-Oxley Act to police auditors, recently warned against lax auditing of U.S.-listed Chinese businesses.  The PCAOB plans to ask Congress to lift restrictions on the disclosure of its disciplinary proceedings against accountants.  With the exception of audit firms located in the Hong Kong special administrative zone, Chinese authorities will not let the PCAOB inspect the U.S. related audit work of PCAOB registered firms in the Peoples Republic of China.

36.     As of March 31, 2010, the PCAOB's Office of Research and Analysis staff had identified 159 companies from the Peoples Republic of China, Hong Kong Special Administrative Region, and Taiwan that accessed the U.S. capital markets by means of the reverse transaction.  As of March 31, 2010 these companies had a market capitalization of $12.8 billion dollars.

37.     Wonder Auto is a CRM company.  In June 2006, Wonder Auto reverse-merged with MGCC Investment Strategies ("MGCC"), a dormant U.S. shell company.

38.     On September 21, 2006, MGCC officially changed its name to "Wonder Auto Technology, Inc." and ticker symbol to WATG.

39.     Like many Chinese reverse merger companies, almost immediately after becoming publicly traded in the U.S., Wonder Auto began to report high gains in revenue and income, while competitors and the auto parts industry contracted.

40.     Also, similar to other reverse merger Chinese companies that have engaged in fraud or recently came under the scrutiny of regulators, Wonder Auto's auditor, PKF Hong Kong ("PKF HK") is not one of the "Big Four" auditing companies, but rather a small accounting firm.

41.     On May 14, 2008, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2008.  The Company reported sales revenue of $31.1 million and a net income of $4 million, or $0.15 per diluted share, as compared to sales revenue

of $21.6 million and net income of $2.7 million, or $0.11 per diluted share for the same period a year ago.

42.     On the same day, the Company filed a quarterly report for the period ended March 31, 2008 on Form 10-Q with the SEC, which was signed by Defendant Yuan and represented the Company's quarterly financial results and financial position.   In addition, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

43.     On August 6, 2008, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2008.  The Company reported sales revenue of $36.7 million and net income of $5.3 million, or $0.20 per diluted share, as compared to sales revenue of $23.6 million and a net income of $3.8 million, or $0.16 per diluted share for the same period a year ago.

44.     On August 7, 2008, the Company filed a quarterly report for the period ended June 30, 2008 on Form 10-Q with the SEC, which was signed by Defendant Yuan and represented the Company's quarterly financial results and financial position.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

45.     On November 3, 2008, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2008.  The Company reported sales revenue of $39.3 million and net income of $6.4 million, or $0.24 per diluted share, as compared

to sales revenue of $27.3 million and a net income of $3.7 million, or $0.15 per diluted share for the same period a year ago.

46.    On November 4, 2008, the Company filed a quarterly report for the period ended September 30, 2008 on Form 10-Q with the SEC, which was signed by Defendant Yuan and represented the Company's quarterly financial results and financial position.   In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

47.    On November 4, 2008, a major research firm noted, "Wonder Auto continues growing despite contraction in the auto industry," and maintained its "Buy" rating.

48.    On March 2, 2009, Wonder Auto issued a press release that announced its financial results for the fourth quarter and year ended December 31, 2008.   For the year, the Company reported sales revenue of $141.2 million and net income of $18.9 million, or $0.70 per diluted share, as compared to sales revenue of $102 million and net income of $14.5 million, or $0.60 per diluted share and for the same period a year ago.

49.    On March 30, 2009, the Company filed an annual report for the period ended December 31, 2008 on Form 10-K with the SEC, which was signed by Defendants Zhao and Yuan and represented the Company's annual financial results and financial position.   In addition, pursuant to SOX, the Form 10-K contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-K was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

50.    On May 4, 2009, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2009.   The Company reported sales revenue of $40

million and net income of $5.2 million, or $0.19 per diluted share, as compared to sales revenue of $31 million and net income of $4 million, or $0.15 per diluted share for the same period a year ago.

51.     On May 6, 2009, the Company filed a quarterly report for the period ended March 31, 2009 on Form 10-Q with the SEC, which was signed by Defendant Yuan and represented the Company's quarterly financial results and financial position.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

52.     On August 3, 2009, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2009.  The Company reported sales revenue of $49.7 million and net income of $5.4 million, or $0.20 per diluted share, as compared to sales revenue of $36.7 million and a net income of $5.3 million, or $0.20 per diluted share for the same period a year ago.

53.     On August 4, 2009, the Company filed a quarterly report for the period ended June 30, 2009 on Form 10-Q with the SEC, which was signed by Defendant Yuan and represented the Company's quarterly financial results and financial position.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

54.     On November 2, 2009, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2009.  The Company reported sales revenue of $59 million and net income of $6.5 million, or $0.24 per diluted share, as compared to

sales revenue of $39 million and a net income of $6.4 million, or $0.24 per diluted share for the same period a year ago.

55.     On the same day, the Company filed a quarterly report for the period ended September 30, 2009 on Form 10-Q with the SEC, which was signed by Defendant Yuan and represented the Company's quarterly financial results and financial position.   In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

56.     On February 11, 2010, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2009.  For the year, the Company reported sales revenue of $211 million and net income of $22.9 million, or $0.82 per earnings share, as compared to sales revenue of $141.2 million and net income of $18.9 million, or $0.70 per diluted share for the same period a year ago.

57.     On March 4, 2010, the Company filed an annual report for the period ended December 31, 2009 on Form 10-K with the SEC, which was signed by Defendants Zhao and Yuan and represented the Company's annual financial results and financial position.  In addition, pursuant to SOX, the Form 10-K contained signed certifications by Defendants Zhao and Yuan, stating that the financial information contained in the Form 10-K was accurate, and that they disclosed any material changes to the Company's internal controls over financial reporting.

58.     On May 6, 2010, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2010.  The Company reported sales revenue of $63.6 million and net income of $5.8 million, or $0.17 per diluted share, compared to sales revenue of $40 million and net income of $5.1 million, or $0.19 per diluted share, for the same period a year

1  ago.

2      59.     On May 10, 2010, the Company filed a quarterly report for the period ended

3  March 31, 2010 on Form 10-Q with the SEC, which was signed by Defendant Yuan and

4  represented the Company's quarterly financial results and financial position. In addition,

5

6  pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Zhao and Yuan,

7  stating that the financial information contained in the Form 10-Q was accurate, and that they

8  disclosed any material changes to the Company's internal controls over financial reporting.

9      60.     On August 9, 2010, the Company issued a press release announcing its financial

10 results for the second quarter ended June 30, 2010. The Company reported sales revenue of $68.5

11

12 million and net income of $6.6 million, or $0.20 per diluted share, compared to sales revenue of

13 $50 million and net income of $5.4 million, or $0.20 per diluted share, for the same period a year

14 ago.

15     61.     On the same day, the Company filed a quarterly report for the period ended June

16 30, 2010 on Form 10-Q with the SEC, which was signed by Defendant Yuan and represented the

17

18 Company's quarterly financial results and financial position. In addition, pursuant to SOX, the

19 Form 10-Q contained signed certifications by Defendants Zhao and Yuan, stating that the

20 financial information contained in the Form 10-Q was accurate, and that they disclosed any

21 material changes to the Company's internal control over financial reporting.

22     62.     On November 9, 2010, the Company issued a press release announcing its

23

24 financial results for the third quarter ended September 30, 2010. The Company reported sales

25 revenue of $78.8 million and net income of $11.9 million, or $0.35 per diluted share, compared to

26 sales revenue of $59 million and net income of $6.5 million, or $0.24 per diluted share, for the

27 same period a year ago.

28

- 15 -

63.    On November 23, 2010, the Company estimated that its 2011 revenue would be between $445-$455 million "based upon management's analysis of market trends and the audited financial statements of Wonder Auto's newly acquired subsidiary, Jinheng (BVI) Ltd. ("Jinheng BVI") among other factors."

64.    The above statements were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them: (1) the Company improperly recognized revenue in incorrect financial reporting periods; (2) the Company improperly engaged in several transactions without properly disclosing their related-party nature; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

65.    On December 6, 2010, the Company announced dismissal of PKF HK and the appointment of PricewaterhouseCoopers Zhong Tian CPAs Limited Company ("PWC Zhong Tian") as the Company's independent accountants for audit work for the year ended December 31, 2010 and first three quarters of 2011.

66.    On March 1, 2011, after the markets closed, the Company issued a press release disclosing that its previously issued financial statements for fiscal years 2008 and 2009, along with its interim period reports, "should no longer be relied upon due to a cutoff error regarding timing of revenue in such periods" and will need to restate its financial statements for the above reporting periods.  Specifically, the press release disclosed in relevant part:

> Historically, the Company has disclosed in its Annual Report that "revenue from sales of its products is recognized when the significant risks and rewards of ownership have been transferred to the buyer at the time when the products are put into use by its customers, the sales price is fixed or determinable and collection is reasonably assured."  During 2008 and 2009, two of the company's significant subsidiaries recorded period sales and cost of sales based on when

usage reports were provided by the customers. The periods covered by the usage reports, however, did not always exactly correspond to the financial reporting periods. As a result of these cut-off errors, sales, cost of sales and net income for individual financial reporting periods (annually and quarterly) have been misstated. The Company and its subsidiaries are implementing accounting procedures designed to permit the Company to report its financial results consistent with U.S. Generally Accepted Accounting Principles ("GAAP"). As a result of these changes, the Company's revenue for 2008 and 2009 is expected to increase from what previously was reported as a result of the shifting of revenue from 2009 to 2008 and from 2010 to 2009. The Company's net income for 2009 and 2008 also are expected to increase as a result of these changes. In addition, the Company continues to expect to meet the previously announced guidance for revenue and profit in its press release dated November 9, 2010.

67. On March 17, 2011, the Company notified the SEC that it was unable to complete its Form 10-K within the prescribed time period.

68. On March 25, 2011, the Company disclosed that it had "received a notification letter from the NASDAQ Stock Market indicating that the Company was not in compliance" with NASDAQ's continued listing requirements as it failed to timely file its annual report on a Form 10-K for the fiscal year ended December 31,2010.

69. On May 6, 2011, at 4:13 p.m. EDT, the NASDAQ halted the trading of Wonder Auto stock at $5.42 due to the Company's failure satisfy its requests for "additional information."

70. On May 12, 2011, the Company disclosed in a press release that its Audit Committee "has undertaken an internal investigation concerning certain investment and acquisition transactions." Consequently, the Company "does not expect that its filings will be completed until the completion of the investigation."

71. On May 20, 2011, the Company disclosed that the Audit Committee's investigation will continue at least through June 2011 and was commenced "in response to a report alleging that the Company had engaged in several transactions without properly disclosing their related-party nature." As to the pending restatement, the Company disclosed the following:

Although the Company's work on the restatement is not complete, at this time it is expected that the restatement will be due primarily to certain sales cut-off errors and the timing of expenses associated with stock option compensation. The restatement also includes adjustments to costs of sales associated with the sales cut-off error and other adjustments. None of the amounts have been finalized at this point as the restatement has not been completed. However, based on the information currently available, it is expected that the net effect of the restatement will be to increase reported net income in 2008 and 2009.

72.     Also on May 20, 2011, the Company disclosed NASDAQ had sent a second letter informing Wonder Auto that it had suspended trading in the Company's common stock pending the Company's provision of a satisfactory Plan of Compliance to NASDAQ by May 23, 2011. The Company stated its intention to submit the plan no later than May 23, 2011.

73.     As of June 20, 2011, the trading in Wonder Auto shares remained halted.  There have been no additional disclosures since the last 8-K was filed.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

74.     Plaintiff brings this action derivatively in the right, and for the benefit of, Wonder Auto to redress injuries suffered, and to be suffered, by Wonder Auto as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Wonder Auto is named as a nominal defendant solely in a derivative capacity.

75.     Plaintiff will adequately and fairly represent the interests of Wonder Auto in enforcing and prosecuting its rights.

76.     Plaintiff was a shareholder of Wonder Auto at the time of the continuing wrong of which he complains.  The continuing wrong included the issuance of improper statements regarding the Company's financial health and business prospects.

77.     The current Board of Wonder Auto consists of the following five individual defendants: Goldman, Wang, Yuan, Zhang, and Zhao.  Plaintiff has not made any demand on the

present Board to institute this action because such a demand would be a futile act, as set forth below.

**Demand Is Excused Because the Conduct of Defendants Goldman, Wang, and Zhang and Zhao Is Not a Valid Exercise of Business Judgment**

78.     The Company has acknowledged that it must restate its financials from 2008 to the present, including all quarterly and annual filings.  At issue is revenue recognition and several related party transactions whose details have yet to be confirmed or fully disclosed by Wonder Auto.   The Company has acknowledged that issues exist relating to revenue recognition surrounding various cut off periods.

79.     Causing the Company to engage in improper and wrongful acts that threaten its survival is not a protected business decision and such conduct can in no way be considered a valid exercise of business judgment.  Accordingly, demand on the Board is excused.

80.     Defendants Goldman, Wang and Zhang serve on the Company's Audit Committee.  The Audit committee is supposed to review the effectiveness of Wonder Auto's "internal control and risk management."  The Audit Committee is a board-level committee that reports directly to the full Board of Directors.

81.     Wonder Auto describes the Audit Committee's primary responsibility as follows:

- selecting our independent auditors and pre-approving all auditing and non-auditing services permitted to be performed by our independent auditors;

- reviewing with our independent auditors any audit problems or difficulties and management's response;

- reviewing and approving all proposed related-party transactions, as defined in Item 404 of Regulation S-K under the Securities Act of 1933, as amended;

- discussing the annual audited financial statements with management and our independent auditors;

- reviewing major issues as to the adequacy of our internal controls and any special audit steps adopted in light of significant internal control deficiencies;

- annually reviewing and reassessing the adequacy of our Audit Committee charter; and

- such other matters that are specifically delegated to our Audit Committee by our Board from time to time.

82.     Defendant Goldman is a certified public accountant ("CPA") "with over 30 years of auditing, consulting and technical experience." He holds an active CPA license in the state of Florida and resides in Virginia.   Defendant Goldman has chaired the Company's Audit Committee since it was formed on March 23, 2007.   Mr. Goldman is considered a financial expert.

83.     Goldman was, until April 21, 2011, a director and Audit Committee member of China Integrated Energy ("CBEH").   CBEH is a Chinese domiciled energy company that was formed by reverse merger in October 2007.   CBEH was recently halted after it failed to comply with NASDAQ listing requirements.   In the past few months, a research report asserted CBEH made improper transfers of cash to the son of CBEH's CEO.   CBEH is also accused of improper acquisitions and inflating revenue, and now accused of lying to shareholders about allegations that have since been corroborated.   The Audit Committee initiated an investigation, but special counsel to the Audit Committee resigned on April 21, 2011.   Goldman's email resignation to the CBEH Board followed that same day and indicated that "recent events relating to the investigation," was a causal factor.

84.     On May 23, 2011, Goldman inexplicably resigned from China Advanced Construction Materials Group ("CADC") board.   CADC is another Chinese domiciled company that had been formed via reverse merger.   Defendant Goldman had served as chairman of the Audit Committee and a member of the Compensation Committee.

85.     For the reasons alleged herein, Defendants Goldman, Wang, and Zhang failed in their duties as Audit Committee members.  These Defendants cannot disinterestedly determine whether Wonder Auto should file suit against the Board for breach of fiduciary duty and waste of corporate assets, as they are personally implicated by their repeated failures to properly carry out the audit function.  These Defendants lack independence, rendering them incapable of impartially considering a demand to commence and vigorously prosecute this action.

86.     The Audit Committee defendants, Goldman, Wang, and Zhang are personally implicated in Wonder Auto's wrongful conduct alleged herein.

**Demand Is Excused Because Defendants Face a Substantial
Likelihood of Liability for Their Misconduct**

87.     Defendant Zhao as Chairman and CEO, was ultimately responsible for the Company's operations, financial statements, assets, and internal controls.  However, in abdication of his fiduciary duties, defendant Zhao orchestrated a fraudulent scheme to inflate the Company's earnings, which enabled the company to engage in secondary offerings.  Wonder Auto's cash was then used to purchase entities related to defendant Zhao at what appears to be questionable values.  As such, defendant Zhao sought to personally benefit from his misconduct at the expense of the Company, and therein breached his fiduciary duties.  Accordingly, defendant Zhao faces a substantial likelihood of liability, and demand upon him is futile.

88.     Defendants Goldman, Wang, and Zhang as members of the Audit Committee, and as such reviewed and approved the improper statements.  As members of the Audit Committee during the relevant period, defendants Goldman, Wang, and Zhang had additional and heightened responsibilities to review "the [C]ompany's accounting and financial reporting processes and the integrity of its financial statements... [and] the performance of the [C]ompany's internal audit function and internal control over financial reporting."  In short, defendants Goldman, Wang, and

- 21 -

Zhang had a fiduciary duty and responsibility to ensure Wonder Auto's "compliance with legal and regulatory requirements," which they failed to do.

89.    During the relevant Period, PKF HK failed to properly audit Wonder Auto's inaccurate and inconsistent financial statements, described herein.   PKF HK falsely and negligently represented that its audits of PKF HK financial statements had been conducted in accordance with Generally Accepted Audit Standards ("GAAS") and wrongfully issued "clean" or unqualified opinions and/or certifications that those financial statements fairly  presented Wonder Auto's financial condition and results of operations in conformity with GAAP.

90.    Notably, on March 31, 2010, the PCAOB publicly issued a strongly worded inspection report disclosing PKF's auditing deficiencies that is had noted during inspections it conducted of PKF HK from December 3, 2007 to December 7, 2007.   The reports disclosed that several audits included "deficiencies of such significance that it appeared to the inspection team that the [PKF HK] did not obtain sufficient competent evidential matter to support its opinion on the issuer's financial statements."   The March 31, 2010 report further detailed the following deficiencies:

- the failure, in two audits, to perform sufficient procedures with respect to a business combination;

- the failure to perform sufficient procedures to evaluate the adequacy of a warranty reserve; and

- the failure to evaluate the appropriateness of the issuer's recording of revenue net of fees.

91.    One of the Audit work deficiencies was specific to an August 23, 2006 business combination for a company only identified as Issuer A.  Based upon information and belief, Issuer A is Wonder Auto.

92.    Despite the PCAOB's publicly noted deficiencies, the Wonder Auto Audit

- 22 -

Committee, who was specifically charged with auditor selection, failed in its duties to provide the oversight that it was required to provide on behalf of the Wonder Auto shareholders and continued to utilize PKF HK services.

93.     However, according to second PCAOB final inspection report issued on February 24, 2011, PKF HK was once again found to have audit deficiencies.  This PCAOB report involved another PCOAB inspection from April 19, 2010 to April 23, 2010.  "The deficiencies identified in both of the audits reviewed included deficiencies of such significance that it appeared to the inspection team that the Firm did not obtain sufficient competent evidential matter to support its opinion on the issuer's financial statements.  These deficiencies included:

- the failure to perform sufficient audit procedures to test revenue; and

- the failure to perform sufficient procedures to evaluate long-lived assets for impairment. [cut-off tests affecting revenue specific to "Issuer A"].

94.     Based on information and belief, Issuer A is Wonder Auto.

95.     Defendants Goldman, Wang, and Zhang knowingly or recklessly made and allowed the Company to make improper statements related to the Company's financial results and business operations.  When presented with the opportunity to correct or retract such statements, defendants Goldman, Wang, and Zhang, again, breached their fiduciary duties as members of the Audit Committee by failing to cure the impropriety of their statements.  Accordingly, defendants Goldman, Wang, and Zhang breached their fiduciary duty of loyalty and good faith because they participated in the wrongdoing described herein.  Thus, defendants Goldman, Wang, and Zhang face a substantial likelihood of liability for their breach of fiduciary duties, and any demand upon them is futile.

- 23 -

96.     Despite their intimate knowledge of the wrongful acts and claims raised by Plaintiff, the current Board has failed to pursue, on behalf of Wonder Auto, any of the wrongdoing alleged by Plaintiff.

97.     Hence, Defendants and Wonder Auto face the threat of prosecution for the wrongdoing alleged herein.  The Director Defendants are personally implicated by their repeated failures to properly carry out basic risk management and audit functions.  Thus, the Defendants lack independence, rendering them incapable of impartially considering a demand to commence and vigorously prosecute this action.

## COUNT ONE

### Breach of Fiduciary Duty
### (Against all Defendants)

98.     Plaintiff incorporates by reference each and every allegation above as though fully set forth and alleged herein.

99.     Defendants are fiduciaries of Wonder Auto and of all of its public shareholders and owe to them the duty to conduct the business of the Company loyally, faithfully, carefully, diligently and prudently.  This cause of action is asserted based upon the Defendants' acts in violation of applicable law, which acts constitute a breach of fiduciary duty.

100.    Defendants, in their roles as directors or executives of the Company, participated in the acts of mismanagement alleged herein and acted in gross disregard of the facts or failed to exercise due care to prevent the unlawful conduct.

101.    Defendants breached their fiduciary duties through their mismanagement of Wonder Auto and by abdicating their corporate responsibilities in at least the following ways:

> (a)  they caused Wonder Auto to violate applicable law, disregarding their duties as fiduciaries;

(b)  they exposed Wonder Auto and its shareholders to millions of dollars in fines, penalties and compensatory damage awards for violations of U.S. and state laws; and

(c)  they subjected Wonder Auto to adverse publicity and loss of goodwill, greatly increased its costs to raise capital, and impaired its earnings.

102.    Defendants breached their duty of loyalty by engaging in a fraudulent scheme to inflate and/or inaccurately represent the Company's earnings, revenue, cash balances, and other financial metrics to mislead investors about the true financial health and business operations of the Company.  In furtherance of their scheme, the Individual Defendants knowingly or recklessly, made and/or allowed the Company to make false or misleading statements about the Company's financial condition.

103.    As a direct and proximate result of Defendants' misconduct, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused Wonder Auto to incur significant legal liability and legal costs to defend itself as a result of Defendants' unlawful actions.

## COUNT TWO

### Gross Mismanagement
### (Against all Defendants)

104.    Plaintiff incorporates by reference each and every allegation above as though fully set forth and alleged herein.

105.    Defendants had a duty to Wonder Auto and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Wonder Auto.

106.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Wonder Auto in a manner consistent with the duties imposed upon them by law.

By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Wonder Auto's affairs and in the use and preservation of Wonder Auto's assets.

107.    During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, and caused Wonder Auto to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Wonder Auto, thus breaching their duties to the Company.

108.    As a direct and proximate result of Defendants' gross mismanagement, Defendants have caused Wonder Auto to incur significant legal liability and loss.

### COUNT THREE

### Waste of Corporate Assets
### (Against all Defendants)

109.    Plaintiff incorporates by reference each and every allegation above as though fully set forth and alleged herein.

110.    As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused Wonder Auto to incur, and Wonder Auto will continue to incur, millions of dollars of costs, expenses, and legal liability, including remediation, fines, penalties, and civil and other suits, all of which stems from the Defendants' unlawful actions.

111.    Because of this waste of corporate assets, Defendants are liable to Wonder Auto.

112.    Petitioners, on Wonder Auto's behalf, have no adequate remedy at law.

### COUNT FOUR

### Unjust Enrichment
### (Against all Defendants)

113.    Plaintiff incorporates by reference each and every allegation above as though fully

set forth and alleged herein.

114.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Wonder Auto.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Wonder Auto.

115.    Plaintiff, as a shareholder and representative of Wonder Auto, seeks restitution from the Defendants, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these Defendants from their wrongful conduct and fiduciary breaches.

116.    Plaintiff, on behalf of Wonder Auto, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on Wonder Auto's behalf, prays for judgment against Defendants as follows:

A.    Against Defendants and in favor of nominal defendant Wonder Auto for the amount of damages sustained by the Company as a result of the Defendants' breaches of fiduciary duties;

B.    Declaring Wonder Auto's directors violated and aided and abetted in the breach of their fiduciary duties to the Company and its shareholders;

C.    Removing and replacing Wonder Auto's directors, instituting a new election of directors and appointing a receiver for the management of the Company until a new election of directors is called and determined;

D.    Ordering appropriate equitable relief to remedy Defendants' misconduct;

E.    Awarding Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.    Granting such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

- 27 -

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff demands trial by jury on all issues so triable.

3

DATED: June 21, 2011                              ALDRICH LAW FIRM, LTD.

4

                                                  _____/s/ John P. Aldrich_____
5                                                 John P. Aldrich, Esq.
                                                  1601 S. Rainbow Blvd., Suite 160
6                                                 Las Vegas, Nevada 89146
                                                  Tel: (702) 853-5490
7                                                 Fax: (702) 227-1975
8                                                 jaldrich@johnaldrichlawfirm.com

9                                                 DOYLE LOWTHER LLP
                                                  William J. Doyle II
10                                                bill@doylelowther.com
                                                  John A. Lowther
11                                                john@doylelowther.com
                                                  James R. Hail
12                                                jim@doylelowther.com
                                                  9466 Black Mountain Road, Suite 210
13                                                San Diego, California 92126
                                                  Tel: (619) 573-1700
14                                                Fax: (619) 573-1701
15

16                                                LAW OFFICES OF BRUCE G. MURPHY
                                                  Bruce G. Murphy, Esq.
17                                                bgm@brucemurphy.biz
                                                  129 Meadows Lane
18                                                Banner Elk, North Carolina 28604
                                                  Tel: (828) 737-0500
19

20                                                *Counsel for Plaintiff*

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Walter Wasileff, declare I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of Wonder Auto Technology, Inc., and I authorize the Complaint's filing. I have reviewed the Complaint's allegations, and to those allegations of which I have personal knowledge, I believe the allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare I am a current holder, and have been a holder, of Wonder Auto common stock.

6/20/2011
Date

_Walter Wasileff_
Walter Wasileff